IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TROY COACHMAN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SEATTLE AUTO MANAGEMENT, INC. dba MERCEDES BENZ OF SEATTLE and AL MONJAZEB,<br><br>　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

## I.　INTRODUCTION

1.1　Troy Coachman brings this disability discrimination action against his former employers Seattle Auto Management dba Mercedes Benz of Seattle and Al Monjazeb. Mr. Coachman worked successfully as the Finance Director of Mercedes Benz of Seattle, a luxury car dealership in Seattle, Washington. Due to cancer, he underwent a surgical laryngectomy in September 2014. After the surgery Mr. Coachman spoke with a prosthetic voice box, which altered the sound of his voice. After he was medically cleared to return to work, the general manager scheduled him to return to work on January 2, 2015. However, dealership owner Al Monjazeb refused to return him to work and ignored Coachman's request for a meeting. Mr. Monjazeb explained privately that the voice box would be unappealing to customers. Monjazeb terminated Mr. Coachman's employment by falsely claiming no position was available. Defendants violated state and federal law by failing to engage in any interactive

COMPLAINT - 1

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

process with Mr. Coachman, failing to reasonably accommodate his disability, and firing him without obtaining any information from his physician about his restrictions.

## II. PARTIES

2.1     Plaintiff Troy Coachman is a former employee of Defendant Mercedes Benz of Seattle.  He is a resident of Pierce County, Washington.  At all times pertinent to this complaint, he was an "employee" within the meaning of the Americans With Disabilities Act As Amended ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.

2.2     Defendant Seattle Auto Management, Inc. is a Washington corporation registered to do business in Washington State.  Seattle Auto Management, Inc. operates under the trade names Mercedes Benz of Seattle[1] and Seattle Mercedes Benz.  Defendant is an "employer" within the meaning of the ADAAA and the WLAD.  At all relevant times, Defendant operated the Mercedes Benz dealership, which is now located on Airport Way in Seattle, Washington.

2.5     Al Monjazeb is the owner of the Mercedes Benz dealership on Airport Way in Seattle, Washington.  Monjazeb is the President of Mercedes Benz of Seattle.  Defendant Monjazeb is an "employer" within the meaning of the WLAD.

## III. JURISDICTION AND VENUE

3.1     This Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and § 1332.

3.2     This Court has supplemental jurisdiction over Plaintiff's WLAD claims pursuant to 28 U.S.C. § 1367.

---

[1] This complaint will refer to Defendant Seattle Auto Management, Inc. by its dba, Mercedes Benz of Seattle. All references to Seattle Auto Management include Mercedes Benz of Seattle and all references to Mercedes Benz of Seattle include Seattle Auto Management.

COMPLAINT - 2

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

3.3     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.    FACTS

4.1     Troy Coachman worked as the Finance Director for Mercedes Benz of Seattle. He joined Mercedes-Benz of Seattle when it acquired his former employer Phil Smart in 2012. Coachman generated millions of dollars each year in financial services income for the dealership. His income production far outpaced any other finance employee.

4.2     Mr. Coachman was diagnosed with vocal cord cancer in March 2014. He underwent chemotherapy and radiation treatment causing him to miss seven weeks of work. He returned to work fulltime in July 2014 with no restrictions on his ability to work. After his treatment, he spoke in a light whisper. His production numbers remained high.

4.3     Then he received the unfortunate news that his cancer had returned. Doctors recommended a total laryngectomy in which the larynx is surgically removed. Mr. Coachman had the surgery on September 19, 2014. The procedure included a tracheoesophageal puncture, a small hole in the windpipe, and the insertion of a prosthetic voice box allowing him to speak.

4.4     Before he went on medical leave and with the approval of General Manager ("GM") Jason Graham and General Sales Manager ("GSM") John Ramstetter, Mr. Coachman hired a temporary employee to cover his absence. That employee quit. She was replaced with a less experienced finance manager, Andrew Argosino, again in a temporary role until Mr. Coachman's return. Owner Defendant Al Monjazeb and other management employees reassured Coachman that he should "take all the time" he needed to recover and assured him "you'll always have a job here." Coachman arranged for a three month medical leave with the dealership's human resources department.

COMPLAINT - 3

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

4.5     After his surgery, Mr. Coachman returned to visit the dealership several times. He did so to stay current on developments in the dealership as he prepared for his return to work. The voice prosthesis altered Mr. Coachman's voice. He began working with a voice therapist.

4.6     After an infection in late November 2014, Mr. Coachman began utilizing a button at this throat which he pushed in order to speak. The sound of his speech and the visual as he pressed a button at his throat to speak was unsettling for some people. He continued working with a voice therapist.

4.7     On December 18, 2014, Mr. Coachman's doctor cleared him to return to work without restrictions as of January 2, 2015.

4.8     Mr. Coachman met with Graham and Ramstetter on approximately December 19, 2014 to discuss his return to work. He notified Graham and Ramstetter that his doctor had released him to return to work on January 2, 2015. Mr. Coachman spoke by pressing a button at his throat. In the meeting, the managers confirmed plans for his return to work on January 2, 2015.

4.9     Mr. Graham called Mr. Coachman on or about December 23 to confirm he would assume Andrew Argosino's schedule beginning on January 2, 2015. Mr. Argosino would transfer to a sales manager position. All was set for Mr. Coachman's return to work the following week.

4.10    Over the next several days, however, both Mr. Graham and Mr. Ramstetter began to back pedal from their plans to return Mr. Coachman to work. Text messages from both managers indicate that Defendant Monjazeb intervened in the plan to return Mr. Coachman to work by expressing his reservations about allowing Coachman to return.

COMPLAINT - 4

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

4.11   According to both men, Monjazeb cited concerns that Coachman's current health would not allow him to fulfill his job duties. They notified Mr. Coachman that Monjazeb wished to meet with him to assess whether he could speak clearly given his voice prosthesis. Monjazeb said privately that Coachman's voice prosthesis would be unaesthetic to the Mercedes clientele. Monjazeb also expressed his personal discomfort with Coachman's surgery and his use of a prosthesis to speak.

4.12   Mr. Coachman met with GM Jason Graham on Thursday, January 1, 2015, the day before he was to return to work. In this meeting, Graham was evasive about Coachman's return to work. He confirmed only that he needed to meet with Defendant Monjazeb and that the January 2 start date was postponed.

4.13   This was upsetting for Mr. Coachman who had been planning his return for months. Coachman immediately contacted Defendant Monjazeb by text message to schedule a meeting for the next day Friday, January 2, 2015. Monjazeb declined the meeting and did not offer to reschedule. Monjazeb did not send another meeting request.

4.14   On Tuesday, January 6, 2015, Mr. Coachman sent an email to the human resources administrator Dee Lopez confirming his desire to return to work. He explained that his doctors had cleared him to return to work, his disability benefits had ended as a result of his medical clearance, the GM had scheduled him to return on January 2, but his return had been postponed at the request of Defendant Monjazeb who wished to meet with him before he returned to work. Coachman said he was awaiting a meeting with Monjazeb but had not yet received a meeting notification.

4.15   At no time did Ms. Lopez, Mr. Graham, Mr. Ramstetter, or Defendant Monjazeb request medical documentation regarding Coachman's release to return to work. If he had been asked, Mr. Coachman would have readily provided the documentation.

COMPLAINT - 5

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

4.16 Monjazeb never met with Coachman to discuss his return to work. Monjazeb never suggested a time for a meeting in response to Coachman's January 1 request. He never responded to Coachman's inquiry to human resources. Neither Mercedes Benz of Seattle nor Monjazeb offered to extend Coachman's medical leave beyond January 2, 2015.

4.17 Two days later, on Thursday morning, January 8, 2015, Defendant Monjazeb terminated Coachman's employment via email. According to Monjazeb, his position had been permanently "filled" during his medical absence and was no longer available.

4.18 The statement that Mr. Coachman's position had been filled was false. The GM had already set in motion plans to transfer the new finance manager to accommodate Coachman's return to work after his temporary medical leave. In addition, a position as a sales manager was available in the dealership at the time for which Coachman was qualified. Further, within weeks of terminating Mr. Coachman's employment, Mercedes Benz of Seattle sought applications from non-disabled individuals for the position of finance manager. According to one witness, an employee explained to one potential applicant that Mercedes Benz of Seattle was "replacing a Finance Director who had cancer."

4.19 Defendant Monjazeb's true reason for terminating Coachman's employment was his perception that Coachman's voice prosthesis disabled him from working. He reached this conclusion without speaking with Coachman personally, without reviewing his medical records or speaking with his doctors, and without any exploration of whether a reasonable accommodation would allow Mr. Coachman to complete the essential functions of his job as Finance Director.

4.20 The dealership had an obligation to continue Coachman's medical leave as a reasonable accommodation if it reasonably believed he was not yet physically able to return to work. Defendant Monjazeb failed to offer Mr. Coachman an accommodation of any kind.

COMPLAINT - 6

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

4.21     Alternatively, Defendant Monjazeb decided to fire Coachman because he believed that Mercedes customers would be uncomfortable working with Coachman because of his prosthesis.  His fear that customers would be uncomfortable grew out of his own discomfort with Coachman's surgery and prosthesis. Monjazeb's effort to cater to discriminatory preferences of customers, real or imagined, is disability discrimination.

4.22    In February 2015, within weeks of his termination from employment, Mr. Coachman began employment at a Subaru dealership.  He began as a Sales Representative and then became a Finance Manager.  His position required him to speak with co-workers, customers, and financial institutions each day.  His voice prosthesis did not disable him from employment at a car dealership.

4.23    Defendants' decision to ignore Coachman's request for a meeting regarding his disability, their decision to end Coachman's employment, and their refusal to provide any reasonable accommodation violated both federal and state disability laws.

## V.   FIRST & SECOND CAUSES OF ACTION:
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA
### (DEFENDANT MERCEDES BENZ OF SEATTLE)

5.1     Plaintiff realleges paragraphs 1.1 through 4.23 as if fully set forth herein.

5.2     Mr. Coachman has no larynx, which substantially limits his ability to speak without the assistance of a voice prosthesis.  At all times pertinent to this complaint, he had a disability within the meaning of the ADAAA.

5.3     Mr. Coachman gave notice of his disability and repeatedly asked Mercedes Benz of Seattle to return him to work at the end of his medical leave on January 2, 2015.

COMPLAINT - 7

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

5.4     The ADAAA requires employers to engage in an interactive process and reasonably accommodate employees with disabilities unless such accommodation would pose an "undue burden."

5.5     The ADAAA prevents employers from discriminating against a qualified individual on the basis of disability in regard to discharge of employees and other terms, conditions, and privileges of employment. This includes discrimination motivated by exaggerated fears and discomfort about an employee's disability and unfounded assumptions about how that disability would impact his work performance.

5.6     Mercedes Benz of Seattle violated the ADAAA by failing to engage in any interactive process with Mr. Coachman, failing to reasonably accommodate his disability, and firing him without obtaining any information from his physician about his restrictions.

5.7     Mercedes Benz of Seattle, through the conduct of its owner Defendant Monjazeb, terminated Mr. Coachman's employment with reckless indifference to Mr. Coachman's rights under the ADAAA.

5.8     As a direct and proximate result of Defendant's unlawful conduct, Mr. Coachman has suffered and continues to suffer lost wages and pecuniary benefits of employment, future lost earnings, emotional pain, grief, and humiliation, and other damages in amounts to be proved at trial.

## VI. THIRD & FOURTH CAUSES OF ACTION:
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE WLAD
### (BOTH DEFENDANTS)

6.1     Plaintiff realleges paragraphs 1.1 through 4.23 as if fully set forth herein.

COMPLAINT - 8

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

6.2    Mr. Coachman has no larynx and is unable to speak without the assistance of a voice prosthesis. At all times pertinent to this complaint, he had a disability within the meaning of the WLAD.

6.3    Mr. Coachman gave notice of his disability and repeatedly asked Mercedes Benz of Seattle to return him to work at the end of his medical leave on January 2, 2015.

6.4    The WLAD requires employers to engage in an interactive process and reasonably accommodate employees with disabilities whose impairment has a substantially limiting effect upon his or her ability to perform the job.

6.5    The WLAD prevents employers from discriminating against a qualified individual on the basis of disability in regard to discharge of employees and other terms, conditions, and privileges of employment. This includes discrimination motivated by exaggerated fears and discomfort about an employee's disability and unfounded assumptions about how that disability would impact his work performance.

6.6    Mercedes Benz of Seattle violated the WLAD by failing to engage in any interactive process with Mr. Coachman, failing to reasonably accommodate his disability, and firing him without obtaining any information from his physician about his restrictions.

6.7    Defendant Monjazeb was a supervisor acting in the interest of the employer. Monjazeb violated the WLAD by failing to engage in any interactive process with Mr. Coachman, failing to reasonably accommodate his disability, and firing him without obtaining any information from his physician about his restrictions.

6.8    As a direct and proximate result of Defendants' unlawful conduct, Mr. Coachman has suffered and continues to suffer lost wages and pecuniary benefits of employment, future lost earnings, emotional pain, grief, and humiliation, and other damages in amounts to be proved at trial.

COMPLAINT - 9

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

## VII.  FIFTH & SIXTH CAUSES OF ACTION:
## DISABILITY DISCRIMINATION BASED UPON PERCEIVED DISABILITY IN VIOLATION OF THE ADAAA AND WLAD
### (DEFENDANT MERCEDES BENZ OF SEATTLE (ADAAA & WLAD))
### (DEFENDANT MONJAZEB (WLAD))

7.1     Plaintiff realleges paragraphs 1.1 through 4.23 as if fully set forth herein.

7.2     In the alternative, Mr. Coachman, because he has no larynx and speaks with the assistance of a voice prosthesis, was regarded as having a physical impairment that substantially limits the major life activity of speaking whether or not the impairment limits a major life activity. Mr. Coachman was perceived to have a physical impairment that disabled him from working whether or not one exists in fact. The perceived impairment was permanent and significant.

7.3     The ADAAA and the WLAD prohibit disability discrimination. This includes discrimination motivated by exaggerated fears and discomfort about an employee's impairment and unfounded assumptions about how that impairment would impact his work performance.

7.4     Mercedes Benz of Seattle violated the ADAAA and the WLAD by firing Mr. Coachman based on perceived disability.

7.5     Mercedes Benz of Seattle, through the conduct of its owner Defendant Monjazeb, terminated Mr. Coachman's employment with reckless indifference to Mr. Coachman's rights under the ADAAA.

7.6     Defendant Monjazeb was a supervisor acting in the interest of the employer. Monjazeb violated the WLAD by firing Coachman based on his perceived disability whether or not it exists in fact.

7.7     As a direct and proximate result of Defendants' unlawful conduct, Mr. Coachman has suffered and continues to suffer lost wages and pecuniary benefits of

COMPLAINT - 10

employment, future lost earnings, emotional pain, grief, and humiliation, and other damages in amounts to be proved at trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants, awarding him:

1. Lost wages, including front and back pay, and lost medical and retirement benefits, and other lost pecuniary benefits of employment;

2. Compensatory damages for emotional pain, grief, humiliation, and mental anguish in an amount to be proved at trial;

3. Punitive damages against Mercedes Benz of Seattle in an amount to be proved at trial;

4. Reinstatement of Mr. Coachman to his former position, or one substantially similar;

5. Reasonable attorneys' fees, expert witness fees, and costs and expenses pursuant to 42 U.S.C. §12205 and RCW 49.60.030(2);

6. Pre- and post-judgment interest at the maximum rate allowed by law;

7. Damages to make up for any adverse tax consequences of any award to Mr. Coachman;

8. A declaratory judgment that Defendants' actions violated the ADAAA and the WLAD; and

///

///

///

COMPLAINT - 11

9. Such other and further relief as this Court may deem appropriate.

DATED this 8th day of February, 2017.

FRANK FREED SUBIT & THOMAS LLP

By: _____
Beth Barrett Bloom, WSBA #31702
Sean Phelan, WSBA #27866
Attorneys for Plaintiff Troy Coachman
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Phone: (206) 682-6711
Email: bbloom@frankfreed.com
       sphelan@frankfreed.com

COMPLAINT - 12