UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TROY COACHMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SEATTLE AUTO MANAGEMENT INC.,<br>dba MERCEDES BENZ OF SEATTLE and<br>AL MONJAZEB<br><br>　　　　Defendants. | Case No. C17-187 RSM<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR PROTECTIVE ORDER |

## I.　　INTRODUCTION

This matter comes before the Court on Defendants Seattle Auto Management, Inc., dba Mercedes Benz of Seattle ("Mercedes of Seattle") and Al Monjazeb's Motion for Protective Order. Dkt. #13. Defendants move the Court for a Protective Order prohibiting Plaintiff, Troy Coachman, from obtaining information about Defendants' financial position under Rule 26(c) of the Federal Rules of Civil Procedure. *Id*. Plaintiff opposes the Motion. Dkt. #16. Plaintiff further requests sanctions under Rules 26(c)(3) and 37(a)(5)(B). *Id*. at 7.  For reasons discussed herein, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. The Court also apportions Plaintiff's sanctions request for attorneys' fees.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR
PROTECTIVE ORDER - 1

## II. BACKGROUND

This matter arises from an employment discrimination action against Defendants Mercedes of Seattle and Mr. Monjazeb. *See* Dkt. #1. Mercedes of Seattle is a car dealership located in Seattle, Washington, and Defendant Monjazeb is the owner of that dealership. *Id* at 2. Plaintiff, Mr. Coachman, was employed by Mercedes of Seattle from 2012 through January 2015. *Id.* at 3. Upon his termination in early January 2015, he was working as the Director of Finance. *Id*. Plaintiff claims that, after undergoing laryngectomy surgery (removal of larynx) which required him to speak using a prosthetic voice box, Defendant Monjezeb wrongfully terminated his employment. *See id*.

In March 2014, Mr. Coachman was diagnosed with vocal cord cancer. *Id*. at 3. After undergoing chemotherapy and radiation treatment, he returned to fulltime employment at Mercedes of Seattle in July 2014 with no restrictions. *Id*. Mr. Coachman's cancer returned, and on September 19, 2014, he underwent laryngectomy surgery and now uses a prosthetic voice box to speak. *Id*. at 3-4. Before surgery, Mr. Coachman states that he arranged for a three-month medical leave with Mercedes of Seattle's human resource department. *Id*. On December 18, 2014, Mr. Coachman's doctor medically cleared him to return to work without restrictions on January 2, 2015. *Id*. at 4. Plaintiff informed Mercedes of Seattle's General Manager, Jason Graham, and its General Sales Manager, John Ramstetter, of his availability to return to work (on January 2, 2015). *Id.* Mr. Graham and Mr. Ramstetter informed Plaintiff that, before returning to work, he needed to speak with Defendant Monjazeb. *Id*. at 5. Plaintiff claims that Defendant Monjazeb declined a meeting with him on January 2, 2015, and Defendant Monjazeb did not offer to reschedule. *Id*.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 2

Instead of returning to work, Plaintiff was allegedly terminated by Defendant Monjazeb via email on January 8, 2015. *Id*. Plaintiff contends that he was fired because "[his] voice prosthesis disabled him from working." *Id*. He further claims that Defendant Monjazeb never met with him to discuss his return to work, failed to review his medical records, and failed to explore reasonable accommodations to allow him to complete his essential functions as a finance director. Dkt. #1 at 6.

On February 8, 2017, Mr. Coachman filed a six-count disability discrimination and failure to accommodate Complaint against Defendants for violations of the Americans with Disabilities Act As Amended ("ADAAA") (42 U.S.C. § 12101, *et seq*.) and the Washington Law Against Discrimination ("WLAD") (RCW 49.60). *See* Dkt. #1.

On February 2, 2018, Mr. Coachman served a deposition notice and request for production of documents on Mercedes of Seattle under Rule 30(b)(6). Dkt. #16 at 3. That notice states, "Plaintiff intends to examine the corporate representative regarding the 'financial ability of Seattle Auto Management, Inc. to pay $100,000 to $300,000 in punitive damage.'" Dkt. #13 at 2. Plaintiff also included a Rule 34 request for production of documents, which requested the following:

> 5.1 The financial ability of Seattle Auto Management, Inc. to pay $100,000 to $300,000 in punitive damages, including the ability to explain and interpret the following financial documents:
> i. Income tax returns for 2014, 2015, 2016, and 2017; ii. Annual reports reflecting the gross income for 2014, 2015, 2016, and 2017; and iii. Annual profit and loss statements for 2014, 2015, 2016, and 2017.
> 5.2 The gross annual revenue produced by Troy Coachman used to calculate his sales commission in 2013, and 2014, inclusive of work under the ownership of Phil Smart, including the ability to interpret and explain the data.
> 5.3 The gross annual revenue produced by Troy Coachman as compared to that produced by the following individuals: Amy Topping, Kris Capps, Andrew Argosino, and Joy Edward during each month of 2014, including the ability to interpret and explain the data.

Dkt. #14, Ex. A at 12.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 3

On February 21, 2018, Defendants objected to Plaintiff's deposition notice and request for production of documents on the grounds that Mercedes of Seattle's financial position "was irrelevant to Plaintiff's claims or burden." Dkt. #13 at 2. The parties met and conferred on February 26, 2018, to resolve the dispute. *Id.* at 3. In that meeting, Defendants "conveyed their position that the requested financial information was irrelevant in light of 42 U.S.C. § 1981(a) [sic] [42 U.S.C. § 1981a]." *Id*. On February 28, 2018, Defendants notified Plaintiff that they were unable to agree with his disclosure requests. That same day, Defendants filed the instant Motion. *Id*.

### III. DISCUSSION

**A. Standard of Review**

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Seiter v. Yokohama Tire Corp.*, 2009 WL 2461000, *1 (W.D. Wash. 2009) ("The decision to issue a protective order rests within the sound discretion of the trial court."). This Court has the authority to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 4

has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Under 42 U.S.C. § 1981a(a)(2), a complaining party may recover compensatory and punitive damages. However, those damages are limited under 42 U.S.C. § 1981a(b)(3). Section 1981a's compensatory and punitive damages cap applies in the context of disability claims brought under the ADA. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 863 (9th Cir. 2017) (citing *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264 (9th Cir. 2009)); *see also* 42 U.S.C. § 1981a(a)(2). Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S. Ct. 2748, 2759, 69 L. Ed. 2d 616 (1981). Evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded. *Id.* at 270.

Thus, the question before this Court is to what extent, if any, of Defendants' financial information should be disclosed in response to Plaintiff's deposition notice and request for production of documents.

**B. Defendants' Motion for Protective Order**

Defendants request a protective order prohibiting disclosure of their financial status because "[it] is not relevant in ADA cases because 42 U.S.C. § 1981a(b)(3) establishes limits on punitive damages based entirely on the *size* of the employer's workforce." Dkt. #13 at 4. (emphasis in original). For support, Defendants cite to *Nyanjom v. Hawker Beechcraft, Inc.,* No. 12-1461-JAR-KGG, 2014 WL 667885, at *3 (D. Kan. Feb. 20, 2014) (agreeing with defendant "that discovery of its net worth is not relevant . . . given the statutory cap on punitive damages

contained in the ADA, which is based on the number of defendant's employees rather than its net worth").

In Response, Plaintiff argues that discovery of "financial position is relevant and necessary in cases seeking punitive damages" because "jurors must understand [a] defendant's financial position before they can fashion a monetary award likely to 'sting' and punish egregious conduct." Dkt #16 at 4. Plaintiff further argues that "the statutory caps do not change the jury's analysis of punitive damages because they are not aware that the law provides statutory caps." *Id*. at 5 (citing 42 U.S.C. § 1981a(c)(2)). In support of his position, Plaintiff cites to several cases where courts found discovery of a defendant's financial worth was relevant when punitive damages were pleaded. *See, e.g., Karl v. City of Mountlake Terrace*, No. C09-1806RSL, 2011 WL 2173848, at *7 (W.D. Wash. June 2, 2011) ("an individual's wealth and ability to pay may be relevant considerations"); *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) ("information about the financial condition of a Title VII defendant is generally admissible at trial if there is a claim for punitive damages"); *E.E.O.C. v. DiMare Ruskin, Inc.*, No. 2:11-CV-158-FTM-36, 2011 WL 3715067, at *3 (M.D. Fla. Aug. 24, 2011) ("defendant's financial worth may be discoverable if plaintiff has pleaded punitive damages under an ADA claim"); *EEOC v. Staffing Network*, No. 02 C 1591, 2002 WL 31473840, at *4 (N.D. Ill. Nov. 4, 2002) (agreeing "that a corporate defendant's financial information may be relevant for purposes of Rule 26 regardless of the fact that punitive damages are capped under Title VII [and ADAA]"). *See* Dkt. #16 at 5-6.

In their Reply, Defendants finally mention the Court's ability to limit the scope of Plaintiff's request. Dkt. #19 at 2 (citing *DiMare Ruskin, Inc.*, 2011 WL 3715067, at *8; Cal. *Psychiatric Transitions*, 258 F.R.D. 391). Specifically, Defendants argue that "tax returns, annual

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 6

reports reflecting gross income, and annual profit and loss statements . . . are overbroad." Dkt. #19 at 3. (citing *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 393 (E.D. Cal. 2009)). As such, Defendants "renew their request for a protective order limiting the disclosure of financial position information." Dkt. #19 at 4.

First, with respect to Defendants' argument that their financial position is not relevant because of the punitive damages cap, the Court disagrees. Plaintiff's request for financial information is relevant as this information is generally admissible at trial given Plaintiff's claim for punitive damages. *See City of Newport*, 453 U.S. at 267. Furthermore, the Ninth Circuit is silent regarding whether a statutory cap on punitive damages precludes discovery of financial information, and Defendants fail to show otherwise. Although informative, the Court is not bound to follow *Nyanjom*, *supra*, as Defendants contend. Moreover, juries are restricted from knowing limits on punitive damages. *See* 42. U.S.C. § 1981a(c)(2). Lastly, Defendants have not convinced this Court that Plaintiff's discovery request is disproportional to the needs of the case, unduly burdensome, or expensive, Fed. R. Civ. P. 26(b), or that an order is needed "to protect [Defendants] from annoyance, embarrassment, oppression, or undue burden or expense…" *Id.* at 26(c)(1). Accordingly, the Court finds that the financial records sought are relevant for purposes of Rule 26 regardless of the fact that punitive damages are capped under the ADA.

Second, the Court limits the scope of Plaintiff's discovery to current financial information. *See California Psychiatric Transitions*, 258 F.R.D. at 395. Specifically, discovery is limited to balance sheets, income statements of cash flow for the years 2016, 2017, any available information through 2018, and gross annual revenue produced by Mr. Coachman used to calculate his sales commission in 2013 and 2014. *See, e.g., id.* at 395 (requiring defendant to produce balance sheets, statements of income, and statements of cash flow for three years, instead of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 7

seven); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (requiring defendant to produce two years of financial records, instead of five); *DiMare Ruskin, Inc.,* 2011 WL 3715067, at *4 (finding a request for three years of financial information (2008 through 2011) was not overbroad in time and scope nor unduly burdensome); *Indus. Elec. Eng'g & Testing Co. v. Dynalectric Co.,* No. 87-2555-V, 1990 WL 80411, at *1 (D. Kan. May 18, 1990) ) (holding that a request for financial data spanning a five-year period is excessively broad and irrelevant to a claim for punitive damages).

### C. Request for Attorneys' Fees

Plaintiff further requests Fed. R. Civ. P. Rule 37(a)(5)(B) sanctions against Defendants in the amount of $3,866.50 because Defendants' motion "was not substantially justified." Dkt. #16 at 7. A request for discovery is "substantially justified" under the rule if reasonable people could differ as to whether the party requested must comply. *Reygo Pac. Corp. v. Johnston Pump Co.,* 680 F.2d 647, 649 (9th Cir. 1982) (implied overruling on other grounds recognized by *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1055 n. 2 (9th Cir.2007)). Plaintiff contends that "the overwhelming body of case law holds that financial status is still relevant and discoverable notwithstanding a damages cap . . . [and Defendants'] motion is therefore not substantially justified." *Id*. Defendants contend that *Nyanjom*, *supra*, applies and that they are "substantially justified in seeking direction and clarification from the Court on the appropriate contours of Plaintiff's discovery request." Dkt. #19 at 4-5. The Court agrees with Plaintiff.

Defendants moved this Court for a protective order prohibiting Plaintiff's financial discovery request because "42 U.S.C. § 1981a(b)(3) establishes limits on punitive damages based entirely on the *size* of the employer's workforce." Dkt. #13 at 4. (Emphasis in original). In that motion, Defendants failed to reference or request the Court to limit the scope of Plaintiff's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 8

discovery, but rather, they sought a complete prohibition of any financial records because "it is not relevant in ADA cases . . ." Dkt. #13 at 4. Not until their Reply did Defendants discuss the issue of limiting the scope of Plaintiff's discovery. *See* Dkt. #19. Thus, the Court finds that reasonable people could *likely not* differ as to whether the party requested must comply. And because Defendants did not argue for a limited scope in their initial pleadings, the Court finds for Plaintiff.

With respect to attorneys' fees, District courts have broad discretion to determine the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). To make this determination, courts determine the "lodestar amount," which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The lodestar figure is presumptively a reasonable fee award. *Id.* at 977. The court may adjust the lodestar figure up or down based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). The court need not consider the *Kerr* factors, however, unless necessary to support the reasonableness of the fee award. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

The Court has reviewed Plaintiff's request for attorneys' fees and supporting documentation. Defendants have also had an opportunity to review this request and challenge the amount, but have failed to do so. *See* Dkt. #19. Plaintiff's requested rate of $275 per hour (Attorney Anne E. Silver) (Dkt. #17) and $495 per hour (Supervising Attorney Beth Barrett Bloom) (Dkt. #19) is reasonable given the Court's experience of comparable rates for this kind of legal work. The Court will only award fees associated with reasonable expenses incurred in researching and drafting the instant Motion and supporting declarations. The Court will not award fees for block-billed entries. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 9

Given all of this, the Court determines that the relevant billing entries total 12 hours (8.3 hours at a rate of $275 per hour and 3.2 hours at a rate of $495 per hour), totaling $3,866.50 in fees.

Under Fed. R. Civ. P. 37(a)(5)(C), "if the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Given the Court's partial granting of Defendant's motion, the Court determines that half of Plaintiff's fees are warranted. Accordingly, fees are apportioned in the amount of $1943.25 to Plaintiff as reasonable expenses for the Motion.

## IV. CONCLUSION

Accordingly, having considered the relevant briefing, supporting declarations, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendants Mercedes Benz of Seattle and Al Monjazeb's Motion for Protective Order (Dkt. #13) is GRANTED IN PART and DENIED IN PART.

2) Defendants shall pay Plaintiff Coachman $1,943.25 in attorneys' fees within thirty (30) days of this Order.

DATED this 5th day of April 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PROTECTIVE ORDER - 10