1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TROY COACHMAN,

          Plaintiff,

     v.

SEATTLE AUTO MANAGEMENT INC.
dba MERCEDES BENZ OF SEATTLE and
AL MONJAZEB,

          Defendants.

NO.  2:17-cv-00187 RSM

DEFENDANTS' MOTIONS IN LIMINE

NOTE ON MOTION CALENDAR:
9/21/18

## I.  INTRODUCTION/RELIEF REQUESTED

Seattle Auto Management Inc. dba Mercedes Benz of Seattle and Al Monjazeb ("Defendants") by and through their counsel of record, hereby ask this Court for an Order in limine excluding certain testimony and exhibits from trial.  If granted, the Court should instruct the parties, their representatives, and their witnesses to refrain from making any direct or indirect mention before the jury of the excluded matters without first obtaining permission from the Court outside the presence and hearing of the jury.

## II.  AUTHORITY/ARGUMENT

Pretrial motions to exclude evidence are designed to simplify trial and avoid the prejudice that often occurs when a party must object to inadmissible evidence in front of a jury. The trial court has the authority and discretion to determine the admissibility of evidence.  A

DEFENDANTS' MOTIONS IN LIMINE - 1
( 2:17-cv-00187 RSM)

6585522.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

trial court should grant a motion in limine if it describes the evidence sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible, and if the evidence is so prejudicial that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during trial.  In pursuit of these ends, Defendants make the following motions in limine:

**1.**     **Unsupported Opinion that Plaintiff Could Perform the Essential Functions of His Position Is Inadmissible.**

On April 4, 2014, Plaintiff produced Fed. R. Civ. P. 26(a)(2)(C) disclosures for "treating" expert witnesses.  In the disclosures, Plaintiff indicated that Marie Repanich, MS, CCC-SLP; Carol Stimson, ARNP; and Alison Leahy, RN, would testify that Plaintiff could perform the essential functions of his position when he was allegedly released to return to work on January 2, 2015.[1]  This testimony should be excluded because these witnesses admitted (or demonstrated) that they have not reviewed a description of Mr. Coachman's former position; they lack an understanding of the job duties; and they are unable to even identify his *job title*.

When Mr. Coachman was employed by Seattle Auto Management d/b/a Mercedes Benz Seattle, he served as the Finance Director.[2]  His position focused on the sale of Financing and Insurance (F&I) products to customers who purchased vehicles from the dealership.  These products included extended warranties and maintenance products.[3]  Mr. Coachman did not sell vehicles. As Finance Director, Mr. Coachman was required to constantly communicate with customers, financing institutions and co-workers, in person and over the phone.[4]

Under the federal rules, a testifying expert must render opinions that are based on facts. They are prohibited from offering unsupported conclusions.[5]  In this case, Mr. Coachman's

---

[1] Willert Decl., Ex. A.
[2] Willert Decl., Ex. B (Coachman February 12, 2018 Dep. 37:13 – 39:10).
[3] Id.
[4] Willert Decl., Ex. C (Graham Dep. 147:3 – 14).
[5] Fed. R. Evid. 702(b).

DEFENDANTS' MOTIONS IN LIMINE - 2
( 2:17-cv-00187 RSM)

6585522.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  disclosed experts intend to render opinions that Plaintiff could perform the essential functions

2  of his position, yet they lack even a fundamental understanding of that position.

3       **Marie Repanich**:  Ms. Repanich admitted that she did not have any understanding of

4  the term "essential functions" and that she could not articulate Mr. Coachman's specific job

5  duties:

6      Q:    Do you have an understanding of what the term "essential functions of a job"
         means?

7      A:    **No, I don't know what that means exactly**.

8      Q:    Do you know what Mr. Coachman's position was with Mercedes Benz?

9      A:    I understand that he was a **salesman**.

10      Q:    Do you know what his job duties were?

11      A:    No, other than a salesman I'm assuming talks to people.
      ***

12      Q:    Do you know how many customers he would see per day?

13      A:    I do not.

14      Q:    Do you know what level of communication or interactions he was having with
         those customers?

15      A:    I do not know anything about--his

16      Q:    Okay.

17      A:    --customer interaction.

18      Q:    I hate to do this to you, but I have to ask you just because I need the record.  And
         I appreciate that you are saying "no," but I still have to ask.  What—do you have

19           any idea of what it was that he was responsible for explaining to customers in his
         job?

20      A:    Something about cars?

21      Q:    Okay.

22      A:    I am assuming.

23        ***

24      Q:    Okay.  Have you ever seen a written description of Mr. Coachman's job?

25

DEFENDANTS' MOTIONS IN LIMINE - 3
( 2:17-cv-00187 RSM)

6585522.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

A:    No.[6]

**Carol Stimson**:    Although Ms. Stimson demonstrated a slightly more detailed understanding of Mr. Coachman's former position, she still had no understanding of the frequency or duration of communications that were required in the position—the most critical aspect of the job:

Q:    Did you understand what his---what the job entailed?

A:    That he had to communicate with customers and coworkers on a regular basis.

Q:    And what—how much—what percentage of time was he communicating?

A:    I would presume that it was throughout his day.  I'm not sure what you mean by that question, so…

Q:    Was—

A:    You mean—you're saying a hundred percent of the day, all of the day?  I mean I understand that just he had to communicate through the day to, you know, perform his job.

Q:    And did you know what kind of communication he had to engage in?

A:    No.

Q:    Do you know how many hours he would be communicating during one business day?

A:    No.

***

Q:    **Other than communicating with his coworkers and customers, do you have any information about the essential functions of Mr. Coachman's job**?

A:    **No.**[7]

**Alison Leahy**:  Finally, Ms. Leahy also lacked a factual understanding of the essential functions of Mr. Coachman's former position:

Q:    Do you have any understanding of what the term essential functions of a job means?

---

[6] Willert Decl., Ex. D (Repanich Dep. 39:14 – 40:19; 41:13-15) [emphasis added]
[7] Willert Decl., Ex. E (Stimson Dep. 67:2 – 20; 82:10 – 13) [emphasis added]

DEFENDANTS' MOTIONS IN LIMINE - 4
( 2:17-cv-00187 RSM)

6585522.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

A:  My understanding is that is the bare minimum of what you have to be able to do to do your role.

Q:  And when did you come to that understanding?

A:  When I learned the definition of essential.

Q:  **Do you know what Mr. Coachman's position was with Mercedes-Benz of Seattle was**?

A:  **I was never told, but I assume they meant selling cars**.

Q:  Okay.

A:  **He never told me what his official title was**.

Q:  So your belief is that he was a salesperson?

A:  He said he worked for Mercedes-Benz.

A:  Okay.

Q:  **Do you know what the essential functions of Mr. Coachman's job was**?

A:  I would have to go back and look at whatever it was.  **I don't know**.[8]

In light of this testimony, the Court should prohibit these witnesses from testifying that Mr. Coachman could perform the essential functions of his position.  As demonstrated, they lack an understanding of Mr. Coachman's job functions; thus, it follows that they should not be permitted the opportunity to provide *expert* testimony that Plaintiff could perform the essential functions of his former position.  With an "expert" designation, there is a real danger that a jury would give undue weight and prejudicial consideration to their opinion even though their opinions are without factual support.[9]

**2.    Speculative Testimony that Mr. Coachman Could Communicate Clearly on January 2, 2015 Is Inadmissible.**

Plaintiff disclosed Carol Stimson, ARNP and Allison Leahy, RN as expert witnesses. In the disclosures, Plaintiff indicated that both witnesses would offer testimony that

---

[8] Willert Decl., Ex. F (Leahy Dep. 29:13- 30:6) [emphasis added].
[9] Fed. R. Evid. 702(b).

DEFENDANTS' MOTIONS IN LIMINE - 5
( 2:17-cv-00187 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6585522.1

"Mr. Coachman could speak clearly to perform the essential functions of his job and was medically able to return to work as of January 2, 2015." This testimony should be excluded.

When asked in her deposition, Ms. Stimson admitted that she could not render an opinion about Mr. Coachman's ability to return to work on January 2, 2015:

> Q:   So as you sit here today, are you able to testify to reasonable medical certainty that Mr. Coachman was—was able to return to work on January 2, 2015?
>
> A:   **No**.
>
> Q:   And is there anything that you know of that would cause you to change that opinion?
>
> A:   **No**.[10]

Moreover, neither Ms. Stimson nor Ms. Leahy evaluated Plaintiff on (or around) January 2, 2015. Both witnesses' <u>final</u> appointments with Plaintiff were on December 2, 2014—a month *before* he claims to have been released to return to work and weeks before before Dr. Mendez made a subsequent determination on December 18, 2014 that Mr. Coachman was still <u>unable to communicate</u>.[11] Thus, neither expert has a factual grounding to opine that Mr. Coachman could communicate on or around January 2, 2015, and in fact, they would be rendering opinions that are inconsistent with known facts.

In the absence of a factual basis supporting their opinions and any demonstration of qualifications to *predict* an individual's ability to communicate a month in advance without direct observation,[12] the Court should prohibit these witnesses from offering any such opinion to the jury.

---

[10] Willert Decl., Ex. E (Stimson Dep. 82:2-9).

[11] Willert Decl., Ex. G (December 18, 2014 Attending Physician's Statement). This exhibit is also the subject of Motion in Limine No. 3.

[12] "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is sufficient basis for the opinion, and how that experience is reliably applied to the facts." The trial court's gatekeeping function requires more than simply taking "the expert's word for it." See Fed. R. Evid. 2000 Advisory Comm. Notes citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311, 1319 (9th Cir. 1995).

DEFENDANTS' MOTIONS IN LIMINE - 6
( 2:17-cv-00187 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6585522.1

**3.**     **Hearsay Statements by Dr. Mendez Are Inadmissible.**

The Federal Rules of Evidence prohibit the admission of hearsay, which is an out of court statement that is introduced for the truth of the matter asserted therein, unless it falls within one of the enumerated hearsay exceptions.[13]

Unfortunately, Dr. Eduardo Mendez, one of Plaintiff's treatment providers, passed away on January 5, 2018, before either party had an opportunity to depose him.  Defendants now ask the Court to prohibit the admission of any hearsay statements made, or documents prepared, by Dr. Mendez.  Defendants anticipate that Plaintiff will seek to introduce statements "made by" Dr. Mendez that Mr. Coachman was released to return to work on January 2, 2015 and that he could perform the essential functions of his job.  Any such statements constitute hearsay, and any attempt to introduce these, or similar statements, should be excluded.[14]  If Plaintiff is permitted to introduce any such statements, Defendants will not have an opportunity to cross-examine Dr. Mendez or otherwise impeach these statements, which will result in a substantial prejudice to Defendants.

**4.**     **Undisclosed Opinions by Plaintiff's Experts Are Inadmissible.**

Fed. R. Civ. P. 26(a)(2)(B)-(C) requires a party to disclose the opinions or subject matter upon which an expert witness is expected to testify.  On April 4, 2018, Plaintiff produced two expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) and expert disclosures pursuant to Fed. R. Civ. P 26(a)(2)(C).  The reports and the disclosures outlined the specific testimony that would be offered by each expert witness.

---

[13] Fed. R. Evid. 802.
[14] Fed. R. Evid. 803(4) relates to statements by the one actually <u>seeking or receiving</u> medical treatment.  It does not cover statements that are made by a treatment provider to the patient.  MICHEAL GRAHAM, FEDERAL PRACTICE AND PROCEDURE, §7045 (7th ed) [emphasis added].  Fed. R. Evid. 803(6) also does not apply because even if a medical record was admissible as a business record, the entries in the records also constitute hearsay (or "hearsay within hearsay") and cannot be admitted unless they independently meet the requirements of an exception, which they do not.

DEFENDANTS' MOTIONS IN LIMINE - 7
( 2:17-cv-00187 RSM)

6585522.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    Defendants ask the Court to issue an order prohibiting Plaintiff's experts from offering

2    testimony outside of the bounds of their respective reports or disclosures.  Under Fed. R. Civ.

3    P. 37(c)(1), a party that fails to make Fed. R. Civ. P. 26 disclosures is prohibited from relying

4    on that information at trial.  Although parties are required to supplement expert disclosures

5    when necessary, at this point—months past the discovery cutoff and less than a month before

6    trial—it would be extremely prejudicial to Defendants if Plaintiff's experts are permitted to

7    render opinions outside the scope of their reports or disclosures without Defendants having an

8    opportunity to conduct discovery into those previously undisclosed opinions.

9    **5.    Any Legal Opinions by Plaintiff's Expert Judy Clark Are Inadmissible.**

10    At the outset of her expert report, Ms. Clark indicates that she was "not retained for the

11    purpose of providing a legal opinion regarding any aspect of the American with Disabilities

12    Act as Amended (ADAAA) *or any other aspect of this legal action*."[15]

13    Defendants expect that Ms. Clark made this representation based on her understanding

14    that she is prohibited from providing testimony regarding "her legal conclusion, *i.e.,* an opinion

15    on an ultimate issue of law."  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051,

16    1058 (9th Cir. 2008).  However, in response to a question posed by Plaintiff, Ms. Clark violates

17    this principle by rendering an opinion on an ultimate issue—her opinion that Defendants

18    terminated Plaintiff "because of his disability:"

19    Question:    Did Seattle Auto Management fulfill their responsibilities as
20            understood by the HR profession under ADAAA when they did not
            offer Mr. Coachman his responsibilities?

21
22    Response:    This is one of the requirements as understood by HR professionals
            under ADAAA, and the employer did not fulfill it, **in fact it appears
23            that they terminated him because of his disability.**[16]

24

25    _____
[15] Willert Decl., Ex. H (Expert Report of Judy Clark, p. 3).
[16] Id., p. 10 [Emphasis added].

DEFENDANTS' MOTIONS IN LIMINE - 8
( 2:17-cv-00187 RSM)

6585522.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Under the ADAAA, the issue of liability turns on whether the adverse employment action was "because of" a disability.[17]  Thus, Ms. Clark's opinion, and any similar opinion, clearly speaks to an ultimate issue in this case and the Defendants' supposed legal liability. Ms. Clark should be prohibited from providing any such opinion to the jury.[18]

**6.**      **Any Legal Opinion by Plaintiff's Human Resources Expert Judy Clark Regarding the Washington Law Against Discrimination Is Inadmissible.**

Plaintiff has asserted claims under the ADAAA and the Washington Law Against Discrimination (RCW 49.60).   In her expert report, Ms. Clark limited her analysis to the ADAAA.   In her deposition, Ms. Clark confirmed that her analysis did not involve an assessment of an employer's obligations under RCW 49.60.[19]  This is sufficient basis alone to exclude any opinions concerning RCW 49.60.

However, Fed. R. Civ. P. 26 requires an expert to "provide a complete statement of all opinions the witness will express and the basis and reasons for them."  Ms. Clark did not disclose opinions about RCW 49.60, or her interpretation of an employer's obligations under that statute.  Under Fed. R. Civ. P. 37, any such opinions must be excluded.

**7.**      **Exclude Evidence of Economic Damages Submitted After Plaintiff's Rejection of Defendants' Offer of Reinstatement.**

On March 20, 2015, following the resignation of a finance manager, Defendants offered to reinstate Plaintiff's employment, which Plaintiff rejected.[20]  Thus, Plaintiff should be prohibited from offering evidence of back pay beyond the date of the unconditional offer of reinstatement. Defendants anticipate that Plaintiff's attorneys will argue that the offer of reinstatement was conditional.  However, this argument is without merit.  The offer did not establish any requirements that were not applicable to Mr. Coachman when he initially

---

[17] Ninth Circuit Model Civil Instructions 12.1.
[18] Fed. R. Evid. 702.
[19] Willert Decl., Ex. I (Clark Dep. 54:8-11).
[20] Willert Decl., Ex. J (March 20, 2015 Offer of Reinstatement)

DEFENDANTS' MOTIONS IN LIMINE - 9
( 2:17-cv-00187 RSM)

6585522.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

accepted employment in 2012 or otherwise applicable to any other employee.  The offer merely required that Mr. Coachman would have to (1) perform the essential functions of his position; (2) adhere to all policies and procedures of the company; and (3) treat co-workers in a respectful and professional matter.

However, setting any conditions aside, there is more direct reason that the offer of reinstatement should limit Plaintiff's back pay. When Plaintiff was asked why he rejected Defendants' offer of reinstatement, he testified that it was because he was already employed:

Q:    At some point did you receive an offer to be reinstated at Mercedes Benz?

A:    Yes, I did.

Q:    And did you accept that offer?

A:    No, I did not.

Q:    Why not?

A:    **Because I was working**.

Q:    And where were you working at the time?

A:    Walker's Subaru.[21]

In light of the offer of reinstatement and Plaintiff's rejection of that offer solely on the grounds that he was already employed, Plaintiff should be prohibited from offering evidence as to back wages that extend beyond Plaintiff's rejection of the offer of reinstatement.  *See e.g.*, *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982).

**8.    Exclude Evidence that Defendants Did Not Provide a Reasonable Accommodation.**

Under federal and state law, the implementation of a reasonable accommodation begins with an employee's request.[22]   In this case, Plaintiff testified that when he was allegedly

---

[21] Willert Decl. Ex. K (Coachman March 27, 2018 Dep., 275:21-276:4)
[22] EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the American with Disabilities Act, "Requesting Reasonable Accommodation."  *See, e.g.*, Ninth Circuit Model Jury Instruction No. 2.7.

DEFENDANTS' MOTIONS IN LIMINE - 10
( 2:17-cv-00187 RSM)

6585522.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

released to return to work in January 2, 2015, and he did not request an accommodation because <u>he did not need one</u>:

> Q:   As of the 18th of December 2015, did you believe that you needed any form of accommodation in order to perform the essential functions of your job?
>
> A:   **I don't believe I did**.  It never occurred to me.
>
> Q:   As of the 31st of December, did you believe that you needed to -- needed any form of accommodations in order to perform the essential functions of your job?
>
> A:   I-- I really wouldn't know.  I never got to perform, so I wouldn't -- I would not have known.
>
> Q:   My question is different, Mr. Coachman.  My question was:  As of the 31st of December, **did you think that you could perform your job without accommodations?**
>
> A:   Oh, I -- now I understand.  **Yes**.
>
> Q:   Is it accurate that you never asked for any form of accommodation?
>
> A:   **It never occurred to me to ask**.[23]

Permitting Plaintiff to now suggest to the jury that he required an accommodation upon his alleged return to work would be inconsistent with Plaintiff's own testimony, constitute speculation, and place an additional burden on Defendant to disprove hypothetical facts.  The law—as supported by Plaintiff's expert's testimony—is clear that an employee has the obligation to request an accommodation to trigger the employer's obligation to accommodate.[24]  Thus, it follows that if Mr. Coachman believed that he could perform the essential functions of his job without accommodation, then Plaintiff should not be allowed to cause confusion by injecting this issue into trial.

**9.   <u>Exclude Evidence Related to Other Businesses Owned by Defendant Al Monjazeb.</u>**

The Court should prohibit Plaintiff from informing the jury about any businesses owned by Al Monjazeb other than Seattle Auto Management d/b/a Mercedes Benz of Seattle.  Plaintiff

---

[23] Willert Decl., Ex. K (Coachman March 27, 2018 Dep. 235:3-21) [Emphasis added].
[24] Willert Decl., Ex. H (Clark Dep.  59:19-57:1).

DEFENDANTS' MOTIONS IN LIMINE - 11
( 2:17-cv-00187 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6585522.1

1    was employed by Mercedes Benz of Seattle, which is an independent entity unrelated to any

2    other business owned by Mr. Monjazeb.  Any reference to any other businesses is irrelevant

3    and prejudicial, and therefore, should be excluded from trial under Fed. R. Evid. 402 and 403.

4    Alternatively, if the Court is not willing to exclude all such references before trial, then

5    Defendants would ask that the Court treat this information in a manner that is consistent with

6    any other evidence of Defendants' financial position as proposed below.

7    **10.**    **Bifurcate the Issue of Punitive Damages and Defendants' Financial Condition.**

8           The decision to bifurcate a trial is within the sound discretion of the court.  *Lear v. IDS*

9    *Prop. Casualty Ins. Co.*, 2016 U.S. Dist. LEXIS 4370, *2 (W.D. WA 2016) (internal citations

10   omitted).  Fed. R. Civ. P. 42(b) provides:

11          For convenience, to avoid prejudice, or to expedite and economize, the court
            may order a separate trial of one or more separate issues, claims, crossclaims,
12          counterclaims, or third-party claims.

13   Bifurcation is a means to simplify issues for the jury and avoid the danger of confusion.  *See*

14   *Lear*, 2016 U.S. Dist. LEXIS 4370 at *2.  In evaluating whether bifurcation is appropriate, the

15   Court should consider factors of convenience, economy, and prejudice.  *Hirst v. Gertzen*, 676

16   F.2d 1252, 1261 (9th Cir. 1982).

17          Defendants anticipate that Plaintiff intends to introduce evidence regarding Defendants'

18   financial condition because he seeks to recover punitive damages under 42 U.S.C 1981a.[25]  In

19   order to recover such damages, Plaintiff must <u>first</u> demonstrate that Defendants engaged in

20   (1) a discriminatory practice or discriminatory practices, (2) with *malice or with reckless*

21   *indifference* to the federally protected rights of an aggrieved individual.[26]  Only if Plaintiff

22   meets this burden would he be able to request an award of punitive damages, and thus, only at

23   that stage would Defendants' financial position be relevant.  Outside of this limited context,

24

25   _____
     [25] Dkt. 1.
     [26] 42 U.S.C 1981a.

DEFENDANTS' MOTIONS IN LIMINE - 12
( 2:17-cv-00187 RSM)

6585522.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   this information is irrelevant, highly prejudicial and designed to inflame the emotions of the

2   jury.  Thus, Defendants request that the Court bifurcate the trial.  The first phase would address

3   liability, economic/non-economic damages, if any, and the question of whether Plaintiff had

4   met his burden on the issue of punitive damages under 42 U.S.C 1981a.  In the second phase, if

5   Plaintiff had met his burden, then the issue of financial condition would be introduced.

6   **11.**   **Exclude Deposition Testimony and Exhibits That Have Not Been Admitted into Evidence from Opening Statements.**

7

8          Defendants ask the Court to prohibit the Plaintiff from introducing experts of deposition

9   testimony in his opening statement.  Permitting Plaintiff to splice segments of deposition

10  without context will result in potentially irreversible prejudice to Defendants.  In the Ninth

11  Circuit, videotaped deposition testimony is routinely excluded from opening statements. *OTR*

12  *Wheel Engineering, Inc. v. West Worldwide Services, Inc*., 2016 WL 3617095, *1 (E.D. WA

13  2016); *Farris v. Intl. Paper Inc.*, 2:13-CV-02079-CAS, 2014 WL 6473273, at *24 (C.D. Cal.

14  Nov. 17, 2014); *Doe v. City of San Diego*, 12CV689-MMA (DHB), 2014 WL 11997809, at *6

15  (S.D. Cal. July 25, 2014).  If the Court is inclined to permit Plaintiff to use excerpts of

16  deposition testimony in his opening statement, the Court should grant Defendants' an

17  opportunity to ensure completeness before it is shown to the jury.  Fed. R. Evid. 106.

18         Likewise, the Court should prohibit Plaintiff from showing exhibits to the jury during

19  opening statement if the exhibits have not been previously admitted into evidence consistent

20  with usual trial procedure.  Defendants have disputed the admissibility of several exhibits

21  offered by Plaintiff, and the prejudice that would result to Defendants' case is significant if

22  they are shown to the jury and later determined to be inadmissible.

23  **12.**   **Exclude Theories of Recovery or Damages Not in the Pleadings.**

24         When a party fails to disclose a theory of recovery in the pleadings or answers to

25

DEFENDANTS' MOTIONS IN LIMINE - 13
( 2:17-cv-00187 RSM)

6585522.1

interrogatories, the Court may exclude evidence that supports that undisclosed theory.[27]

Defendants expended significant time and resources to conduct discovery in this case. It would be unfair and unduly prejudicial to allow Plaintiff to introduce any new theory of recovery or damages at trial. Plaintiff's theories of recovery and causes of action should be limited to those set forth in the Complaint, and he should not be permitted to introduce evidence in this case on any theory or cause of action not expressly set forth in the Complaint.

To avoid an unjust result and undue prejudice, any evidence or testimony raising new theories of liability or damages must be excluded from trial.[28]

**13.** **Prohibit the Parties from Making References to Settlement Offers, Demands, Negotiations, Discussions, and/or the Absence Thereof.**

Fed. R. Evid. 408 specifically prohibits any mention of settlement offers or proposals in order to prove the validity or invalidity of a claim. The parties should be prohibited from presenting any testimony or evidence on settlement negotiations and/or mediation, or referring to them in arguments at trial.

**14.** **Exclude Evidence of Other Claims, Complaints, Charges, Lawsuits or Verdicts.**

Plaintiff must be precluded from mentioning or discussing any reports, complaints, legal demands, lawsuits, claims, verdicts, settlements or other actions pursued by any other individual against Defendants.

Plaintiff alleges theories of discrete disability discrimination under the Washington Law Against Discrimination and the ADAAA. Plaintiff has not asserted any claim premised on a "pattern and practice" or "disparate impact" theory that would make any such information *potentially* relevant. As such, evidence of other reports, complaints, legal demands, lawsuits,

---

[27] *See Stark v. Allis-Chalmers*, 2 Wn. App. 399, 404–06, 467 P.2d 854 (1970) (stating that failure to disclose theory deprives the opposing party of the opportunity to prepare a defense to theory before trial and is properly excluded); *see also Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 550–52, 815 P.2d 798 (1991) (stating that court's refusal to admit evidence on alternative theories alleged just five or six days before discovery cutoff was not abuse of discretion).

[28] Fed. R. Evid. 401 and 403.

DEFENDANTS' MOTIONS IN LIMINE - 14
( 2:17-cv-00187 RSM)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6585522.1

claims, verdicts, settlements or other actions is irrelevant to Plaintiff's claim and is more prejudicial than probative, confusing and a waste of time.[29]

**15.**   **Prohibit Any "Golden Rule" Argument That the Jury Should Place Themselves in the Position of a Party or "Send a Message" Arguments.**

It has been long held that so-called "Golden Rule" arguments—asking jurors to place themselves in the shoes of a party—are improper.[30]  Such arguments may take many forms, but essentially constitute any attempt to have the jury consider the amount of money to not be in Plaintiff's position, or other language attempting to have jurors place themselves in the position of Plaintiff.  Such arguments are likened to asking the jury to imagine how one party feels rather than analyzing the evidence impartially as the finder of fact.  These arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.

Likewise, the Court should prohibit any statement, reference or appeal to the effect that the jury serves, in any manner, as the "conscience of the community" or has a "responsibility to protect the community" in rendering a certain verdict.  Plaintiff should be prohibited from suggesting that the jury should "send a message" by entering a certain verdict.  Any attempt to have the jury decide the case based on personal emotions or a sense of duty to the community is irrelevant, inflammatory and unfairly prejudicial.[31]  The Court should prohibit Plaintiff from making such statements or arguments.[32]

---

[29] Id.
[30] *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 138-39, 750 P.2d 1257 (1988); *Accord, e.g., Rojas v. Richardson*, 703 F.2d 186, 191 (5th Cir. 1983); *Fountain v. Phillips*, 439 So. 2d 59, 63 (Ala. 1983); *Beaumaster v. Crandall*, 576 P.2d 988, 994 (Alaska 1978); *Delaware Olds, Inc. v. Dixon*, 367 A.2d 178, 179 (Del. 1976); *Millen v. Miller*, 224 Pa. Super. 569, 308 A.2d 115, 117-18 (1973); *World Wide Tire Co. v. Brown*, 644 S.W.2d 144, 145–46 (Tex. Ct. App. 1982); See generally, Annot., Prejudicial Effect of Counsel's Argument, in Civil Case, Urging Jurors To Place Themselves in the Position of Litigant or To Allow Such Recovery as They Would Wish if in the Same Position, 70 A.L.R.2d 935 (1960).
[31] Fed. R. Evid. 401-403.
[32] Alternatively, the Court should limit the introduction of these arguments to the appropriate phase of the trial to avoid prejudice to Defendants.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   DATED this 4th day of September, 2018.

2                                                    s/ Sheryl J. Willert
                                                    Sheryl J. Willert, WSBA #08617
3                                                    s/ Jeffery M. Wells
                                                    Jeffery M. Wells, WSBA #45840
4                                                    Attorneys for Defendants
                                                    WILLIAMS, KASTNER & GIBBS PLLC
5                                                    601 Union Street, Suite 4100
                                                    Seattle, WA 98101-2380
6                                                    Phone:   (206) 628-6600
                                                    Email:   swillert@williamskastner.com
7                                                             jwells@williamskastner.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANTS' MOTIONS IN LIMINE - 16
( 2:17-cv-00187 RSM)

6585522.1

## <u>CERTIFICATE OF SERVICE</u>

1

2

    I hereby certify that on September 4, 2018, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

6                          **Beth Barrett Bloom at:**
                           **bbloom@frankfreed.com**
7

8                          **Sean Phelan at:**
                           **sphelan@frankfreed.com**
9

10                         **Anne Silver at:**
                           **asilver@frankfreed.com**
11

12                         **Jamal N. Whitehead at:**
                           **whitehead@sgb-law.com**
13

14                                          s/ Sheryl J. Willert
                                            Sheryl J. Willert, WSBA #08617
15                                          s/ Jeffery M. Wells
                                            Jeffery M. Wells, WSBA #45840
16                                          Attorneys for Defendants
                                            WILLIAMS, KASTNER & GIBBS PLLC
17                                          601 Union Street, Suite 4100
                                            Seattle, WA 98101-2380
18                                          Phone:   (206) 628-6600
                                            Email:   swillert@williamskastner.com
19                                                    jwells@williamskastner.com

20

21

22

23

24

25

DEFENDANTS' MOTIONS IN LIMINE - 17
( 2:17-cv-00187 RSM)

6585522.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600